UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF COLUMBIA

---

| | |
|---|---|
| THE COMMONWEALTH OF VIRGINIA, | ) |
| Office of the Attorney General, | ) |
| 900 East Main Street, Richmond, Virginia 23219, | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) Civil Action No. _____ |
| ERIC H. HOLDER, JR., in his official capacity as | ) |
| Attorney General of the United States; and THE UNITED | ) |
| STATES OF AMERICA, Defendants. | ) |

---

**COMPLAINT FOR DECLARATORY JUDGMENT AND REQUEST FOR THREE-JUDGE COURT WITH EXPEDITED REVIEW**

Plaintiff states the following for its Complaint:

PARTIES

1.   Plaintiff, the Commonwealth of Virginia, is a State of the United States of America and brings this action on behalf of itself and the citizens of the Commonwealth.  The Commonwealth of Virginia is subject to the preclearance requirements under the Voting Rights Act of 1965, as amended, 42 U.S.C. §1973c (hereinafter Section 5 of the VRA).

2.  Defendant Eric H. Holder, Jr., Attorney General of the United States, in his official capacity, is principally responsible for administering Section 5 of the VRA, including the defense of Section 5 litigation in the United States District Court for the District of Columbia.

JURISDICTION AND VENUE

3.  This action is brought pursuant to Section 5 of the VRA, under which this Court is authorized to issue the Declaratory Judgment Plaintiff seeks.  This court has subject matter jurisdiction pursuant to 28 U.S.C. §1331.

4.  Venue is proper in this court pursuant to Section 5 of the Voting Rights Act and 28 U.S.C. §2284.  This action is properly determinable by a three-judge district court based on Section 5 of the VRA and 28 U.S.C. §2284.

FACTS

5.  This is an action for declaratory judgment, pursuant to Section 5 of the VRA and 28 U.S.C. §2201.  It is filed for the purpose of determining an actual controversy within the court's jurisdiction between the parties, and to allow Plaintiff to enforce duly enacted statutes relating to the redistricting of its state legislative districts and, thereby, the nomination and election of members of the General Assembly of the Commonwealth of Virginia.  That legislation was passed by the General Assembly on April 28, 2011, and signed by Virginia Governor Robert F. McDonnell on April 29, 2011.  No part of the redistricting legislation can be implemented by Plaintiff until this Court enters a declaratory judgment, as requested by Plaintiff.

2

6.  The General Assembly of the Commonwealth of Virginia consists of the Virginia Senate and the Virginia House of Delegates. Members of the Virginia Senate are elected to four-year terms. All 40 state Senators are elected during the same general election. Members of the Virginia House of Delegates are elected to two-year terms. All 100 state Delegates are elected during the same general election.

7.  The Commonwealth of Virginia will hold its next general election for its House of Delegates and state Senate on November 8, 2011. The primary elections for that general election will be held on August 23, 2011. During its 2011 regular session, the General Assembly moved the primary election date from June 14, 2011 to August 23, 2011, in significant measure, to allow additional time for the preclearance of its districting plan.

8.  Under the Virginia Constitution, Article II, Section 6, the Virginia General Assembly is responsible to "reapportion the Commonwealth into electoral districts." Reapportionment is to occur the year after the decennial Census is conducted, such as 2011, and is to occur each ten years thereafter. The Virginia Constitution requires only that electoral districts "be composed of contiguous and compact territory and shall be so constituted as to give, as nearly as is practicable, representation in proportion to the population of the district."

9.  Though the legislation including the House Plan and the Senate Plan contained in HB5005 passed at the end of April, interest in redistricting was high for months before the legislation's final passage. For example, in January 2011, Governor McDonnell appointed the Independent Bipartisan Advisory Committee on Redistricting to provide

3

input on the redistricting process which received numerous submissions and made a submission of its own to the General Assembly.

10. Prior to the General Assembly's special session to discuss redistricting, numerous public hearings were held. The House of Delegates Committee on Privileges and Elections held public hearings. The Senate of Virginia Committee on Privileges and Elections held public hearings. The Joint Reapportionment Committee, comprised of state Delegates and state Senators, held public hearings.

11. On February 3, 2011, the Commonwealth received the 2010 decennial census redistricting data from the Census Bureau.

12. On Sunday, February 27, 2011, the General Assembly's regular 2011 Session adjourned. On that day the Governor issued a call for a special session to address redistricting. The Special Session convened February 27, 2011. After agreeing to a joint resolution setting the ground rules for the Special Session, the Special Session then recessed until April 4, 2011, allowing time for additional public hearings and the drawing of plans.

13. The General Assembly passed its first redistricting plan on April 11, 2011. The House passed its redistricting of the House with the Senate tacking its redistricting of the Senate to the House plan. The combined plan passed the House of Delegates with bipartisan support and the support of minority House members. The combined plan passed the Senate along party lines with the support of minority senators. Governor McDonnell vetoed the bill on April 15, 2011, citing concerns regarding the lack of bipartisan support

for the Senate plan, the possible insufficient compactness of some of the Senate districts, and arguably unjustified population deviations in some of the Senate districts.

14. The General Assembly passed its second redistricting bill, HB 5005, redistricting all 100 of its House districts and all 40 of its Senate districts, on April 28, 2011. HB 5005 passed with substantial bipartisan support in both the House of Delegates and the Senate.

15. The House of Delegates passed HB 5005 by a margin of 63-7, with only two delegates representing majority minority districts voting against it. The Senate passed the bill 32-5, with no senator representing a majority minority district voting against it.

16. The voting results are not surprising given that delegates and senators representing majority minority districts were actively involved in the redistricting process from the beginning. Indeed, each General Assembly committee charged with administering the redistricting process - the Joint Reapportionment Committee, the Senate of Virginia Committee on Privileges and Elections and the House of Delegates Committee on Privileges and Elections – each contained legislators who represent majority minority districts.

17. Virginia Governor Robert F. McDonnell signed HB 5005 into law on April 29, 2011.

18. The redistricting process worked as the Virginia Constitution envisioned. The General Assembly redistricted the House of Delegates and the Senate after receiving 2010 Census information and soliciting input from Virginia voters. After considering and debating the merits of various plans, the General Assembly produced a plan that ultimately garnered a

bipartisan majority in both houses of the legislature.  The governor signed the bill, which is now ready for preclearance.

19. Though the House of Delegates redistricting plan ("House Plan") and Senate redistricting plan ("Senate Plan") were passed in the same legislation, the plans are severable and should be evaluated separately for Section 5 preclearance purposes.

20. Although Plaintiff seeks preclearance by this Court, it has compiled information in the nature of an administrative preclearance submission to the Department of Justice which will be promptly provided to Defendants.  Given the open nature of the redistricting process, Plaintiff has little, if any, additional information regarding the redistricting process that is not readily available to the Department of Justice.

21. Though the subject redistricting plans have been enacted consistent with Virginia law, the Commonwealth must receive preclearance under Section 5 of the VRA for any changes to its voting rules or procedures before those changes may be enforced.

22. For the purposes of this litigation, Section 5 of the VRA requires that a jurisdiction subject to its provisions obtain preclearance whenever it "shall enact or seek to administer any voting any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1964."

23. A covered jurisdiction may not enforce changed standards, practices or procedures with respect to voting, including redistricting plans, until it obtains a declaratory judgment from the United States District Court for the District of Columbia that such changes do

"not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color" or has submitted the proposed change to the Attorney General of the United States and the Attorney General has not objected to it.

24. The focus of the preclearance inquiry is retrogression.  The question is whether there has been "retrogression in the position on racial minorities with respect to their effective exercise of the electoral franchise."   The scope of relevant evidence regarding that inquiry can be quite narrow.  Relevant evidence would include whether minority voters were included in the redistricting process, how the representatives of minority voters reacted to the plan and how minority voters can exercise their vote in their districts.  This information is readily available.

25. The statistics on which retrogression analysis is based are also readily available, including demographic statistics regarding minority populations in districts in which minority voters have significant influence or ability to elect candidate of choice.  The numbers the redistricting committees and the General Assembly used in redistricting are readily available.  Even if there is debate regarding what the data means, the data is easy to find quickly.

26. It is important that this Court act upon Plaintiff's claims at the earliest practicable date.  If necessary, an expedited trial should be scheduled to allow the Commonwealth of Virginia as much time as possible to administer its elections appropriately.  Very little time remains to shepherd the redistricting plan through preclearance if they are to be used in Virginia's 2011 elections.  Though Virginia's primary elections are not scheduled until August 23, 2011, the election machinery must perform well in advance of that date.

Virginia law requires that printed ballots be ready to be sent to absentee voters at least 45

days prior to the primary election.  Consequently, ballots must be available by July 7,

2011.  Additional lead time is necessary for the state to know what to print on the ballots.

Indeed, candidate for primary elections must declare their intention to run by June 15,

2011.  Consequently, preclearance must be resolved by June 15, 2011.  Of course, any

additional change to the election schedule would likely qualified as a standard, practice or

procedure with respect to voting would itself need to be precleared under section 5 of the

VRA. Indeed, the change in the date of the primary itself had to be precleared.

### COUNT I

27. The allegations in Paragraphs 1 through 26 are hereby reincorporated herein.

28. The Senate Plan, when compared to its previous benchmark districting plan, does not

    lead to a retrogression in the position of racial minorities with respect to their effective

    exercise of the electoral franchise and, pursuant to section 5 of the VRA, will not have

    the effect of denying or abridging the right to vote on account of race or color.

29. The chart below compares the Black Voting Age Population % (BVAP) in the

    benchmark plan to the BVAP % in HB 5005 with respect to majority minority Senate

    districts.  The benchmark plan is the Commonwealth's 2001 districting  plan as enacted

    in the wake of the 2000 Census and used in statewide elections since 2001.  The district

    deviations are as follows:

8

| District | Benchmark BVAP (2001) | HB5005 BVAP (2001) | % Difference |
|----------|----------------------|--------------------|--------------|
| 2 | 55.8% | 51.2% | -4.8 |
| 5 | 55.9% | 53.6% | -2.3 |
| 9 | 55.0% | 50.8% | -4.2 |
| 16 | 55.9% | 53.1% | -2.8 |
| 18 | 58.5% | 53.5% | -5.0 |

30. The Senate Plan was not adopted with a retrogressive intent and does not have the purpose of denying or abridging the right to vote on account of race or color.

31. Plaintiff is entitled to a judgment that the Senate Plan has neither the purpose nor effect of discriminating on the basis of race or color under Section 5 of the VRA and that the Senate Plan may be implemented without delay.

## COUNT II

32. The allegations in Paragraphs 1 through 26 are hereby reincorporated herein.

33. The House Plan, when compared to its previous benchmark districting plan, does not lead to a retrogression in the position of racial minorities with respect to their effective exercise of the electoral franchise and, pursuant to section 5 of the VRA, will not have the effect of denying or abridging the right to vote on account of race or color.

34. The chart below compares the Black Voting Age Population % (BVAP) in the benchmark plan to the BVAP % in HB 5005 with respect to majority minority House of

9

Delegates districts.  The benchmark plan is the Commonwealth's 2001 districting plan as enacted in the wake of the 2000 Census and used in statewide elections since 2001.  The district deviations are as follows:

| District | Benchmark BVAP (2001) | HB 5005 BVAP (2011) | % Difference |
|---|---|---|---|
| 63 | 57.8% | 59.5% | 1.7 |
| 69 | 57.6% | 55.2% | -2.4 |
| 70 | 57.2% | 56.4% | -.8 |
| 71 | 55.5% | 55.3% | -.2 |
| 74 | 59.7% | 57.2% | -2.5 |
| 75 | 56.2% | 55.4% | -.8 |
| 77 | 55.9% | 58.8% | 2.9 |
| 80 | 55.3% | 56.3% | 1.0 |
| 89 | 53.4% | 55.5% | 2.1 |
| 90 | 54.0% | 56.6% | 2.6 |
| 92 | 59.3% | 60.7% | 1.4 |
| 95 | 58.1% | 60.0% | 1.9 |

35. The House Plan was not adopted with a retrogressive intent and does not have the purpose of denying or abridging the right to vote on account of race or color.

36. Plaintiff is entitled to a judgment that the House Plan has neither the purpose
nor effect of discriminating on the basis of race or color under Section 5 of the
VRA and that the House Plan may be implemented without delay.

WHEREFORE, Plaintiff respectfully prays that this Court:

(A) Convene a three judge district court to hear the matters raised by Plaintiff's
Complaint;

(B) Issue such orders and convene such conferences as may be necessary on an
expedited basis to ensure that what little discovery may be necessary in this action be
taken and completed as quickly as possible, and to ensure that a trial on the merits, if
necessary, be had at the earliest possible date so that the Commonwealth of Virginia may
proceed to ready its election machinery to conduct the election of its state Delegates and
Senators;

(C) Enter such other and further orders as may be necessary during the pendency of
this case to ensure that it be handled as expeditiously as possible;

(D) Enter a declaratory judgment that the Senate Plan and House Plan at issue have
neither the purpose nor effect of denying or abridging the right to vote on account of race
or color, and that the plans may be enforced by Plaintiff notwithstanding Section 5 of the
VRA; and

(E) Grant Plaintiff such other and further relief as may be proper and appropriate,
including their costs.

11

Respectfully Submitted,

*E. Duncan Getchell, Jr.*
Counsel

KENNETH T. CUCCINELLI, II
Attorney General of Virginia

E. DUNCAN GETCHELL, JR.
Solicitor General of Virginia
dgetchell@oag.state.va.us

STEPHEN R. MCCULLOUGH
Senior Appellate Counsel

*Counsel for Plaintiff*
  *Commonwealth of Virginia*

CHARLES E. JAMES, JR.
Chief Deputy Attorney General

WESLEY G. RUSSELL, JR.
Deputy Attorney General

OFFICE OF THE ATTORNEY GENERAL
900 East Main Street
Richmond, Virginia 23219
Telephone: (804) 786-2436
Facsimile:  (804) 786-1991